## In re INTERBOROUGH CONSOL. CORPORATION.

### Petition of H. CONTENT & CO. et al.

(District Court, S. D. New York. June 21, 1920.)

1. **Bankruptcy ⊗⟶389½—Stockholders of consolidating corporations may exchange stock after bankruptcy of new corporation.**

Under Business Corporations Law N. Y. §§ 7, 8, on the consolidation of two corporations, stockholders of either have the right to exchange their stock for that of the consolidated corporation on the terms of the consolidation agreement until and unless their stock has been appraised and paid for by the consolidated corporation, as provided in section 8, and the bankruptcy of such corporation, such action not having been taken, does not affect that right.

2. **Bankruptcy ⊗⟶140(3)—Money deposited to pay dividend declared becomes trust fund for stockholders.**

Where a consolidated corporation periodically declared dividends on its preferred stock, each time depositing in bank in a special fund sufficient money to pay the dividend, such deposit became a trust fund held by it for the stockholders, which did not pass to its trustee in bankruptcy, and in which stockholders of the consolidating corporations, who had not yet exchanged their stock for that of the new corporation, but had the right to do so, with the right to the accumulated dividends, were entitled to share to the extent of their dividends on making such exchange.

In Bankruptcy. In the matter of the Interborough Consolidated Corporation, bankrupt. On petition of H. Content & Co. and others, claiming special fund. Decree for petitioners.

Harold A. Content, of New York City, for petitioners.
Alfred A. Cook, of New York City, for trustee.

MAYER, District Judge. On assuming his duties, the trustee of the bankrupt came into possession of a fund of $57,330, which constituted practically all of the moneys on deposit with Guaranty Trust Company of New York in an account entitled "Interborough Consolidated Corporation Dividend Account—Interborough Consolidated Corporation Preferred Stock" (hereinafter referred to as divident account). The present petition, advanced on behalf of petitioners and all persons similarly situated, sets up a claim to the fund and invites adjudication as to the rights of general creditors and of petitioners and those similarly situated.

The bankrupt was created by consolidation, pursuant to the provisions of section 7 of the Business Corporations Laws of New York (Consol Laws, c. 4), of Interborough-Metropolitan Company and Finance & Holding Corporation, both New York corporations. The agreement of consolidation was entered into on or about April 23, 1915, and at a special meeting of the board of directors of Interborough-Metropolitan, held on April 23, 1915, the execution of the agreement was authorized. At a special meeting of the stockholders of Interborough-Metropolitan, duly called for and held on June 1, 1915, the agreement of consolidation was approved, ratified, and adopted by more than the requisite statutory vote. By paragraph VIII of the consolidation agreement it was provided, inter alia:

⊗⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"The shares into which the capital stock of the corporation shall be divided shall be distributed to the preferred * * * stockholders of the Interborough-Metropolitan Company, * * * who shall surrender their respective certificates of stock indorsed for transfer, as follows: For each share of preferred stock of the Interborough-Metropolitan Company indorsed for transfer, so as to carry all accumulations of dividends and interest thereon as of the date when the consolidation becomes effective, one share of the preferred stock of the consolidated corporation."

On or about June 25, 1915, the Interborough Consolidated Corporation sent a notice the holders of stock of the Interborough-Metropolitan, which contained, inter alia, the following:

"Holders of preferred stock of Interborough-Metropolitan Company are hereby notified to deposit their stock duly indorsed with the secretary of this company at 165 Broadway, New York City, for exchange for the preferred stock of the Interborough-Consolidated Corporation. The preferred stock of Interborough Consolidated Corporation will be ready for delivery in exchange for preferred stock of the Interborough-Metropolitan Company on and after June 23, 1914."

Later, under date of July 17, 1915, a further notice was sent as follows:

"Notice to Holders of Preferred Stock and Preferred Stock Voting Trust Certificates of Interborough-Metropolitan Company. According to our records, the preferred stock of the Interborough-Metropolitan Company standing in your name has not yet been exchanged for stock of the Interborough-Consolidated Corporation. A dividend of 1½ per cent. has been declared on the latter, payable when and as the Interborough-Metropolitan preferred stock is exchanged for the preferred stock of the Interborough Consolidated Corporation. Stock certificates may be sent to the undersigned for that purpose."

Thereafter it was the general practice of the Consolidated Corporation to issue shares of its preferred stock upon presentation of a certificate for an equal number of shares of the preferred stock of Interborough-Metropolitan. No shares of preferred stock, however, were issued until the holder of Interborough-Metropolitan preferred stock actually presented and delivered his certificates for exchange. At the time of the adjudication of the Consolidated Corporation as a bankrupt, there remained 3,085 shares of preferred stock of the Interborough-Metropolitan which had not been exchanged for preferred stock of the Consolidated Corporation.

It is provided by paragraph X of the agreement of consolidation, supra, with respect to the preferred stock of the Consolidated Corporation, as follows:

"The holders of the preferred stock shall be entitled to receive or to have set aside in trust for the payment thereof during any fiscal year, when and as declared by the directors from the surplus, or net profits for such fiscal year, and before any dividends shall be paid to the common stockholders during such fiscal year, noncumulative dividends not exceeding 6 per centum per annum, payable yearly, half-yearly, or quarterly, and on dates to be determined by the directors."

The certificate of preferred stock of the Consolidated Corporation contains a similar provision in respect of the payment of dividends to the holders of preferred stock. Article VII of the by-laws of the Consolidated Corporation contains the same provisions in respect of

the dividends to be paid to the holders of preferred stock of the Consolidated Corporation.

The minutes of a meeting of the board of directors of Consolidated Corporation held on June 3, 1915, set forth:

"The president stated that in order to facilitate the disbursements of dividends and note and bond interest payments, it was desired to create special deposit accounts by the withdrawal from the general fund from time to time of sums sufficient to meet the different interest and dividend requirements, each such withdrawal to be accomplished by check regularly drawn and signed in accordance with the by-laws, and to comprise a separate and distinct deposit to cover the exact amount of one full interest payment, and that he had, subject to the approval of the board, appointed John M. Burnet deputy treasurer, with power, in conjunction with Edward W. Sayre, coupon or dividend clerk to sign checks against these special deposit accounts for the purpose of making the payments in question. Whereupon,

"On motion, duly seconded, it was resolved: That the appointment of John M. Burnet as deputy treasurer of this company, with power, in conjunction with Edward W. Sayre, to disburse special funds set apart for the payment of dividends and note and bond interest be and the same hereby is ratified, approved, and confirmed."

On June 23, 1915, at a meeting of the board of directors, the first dividend payable upon the preferred stock of the Consolidated Corporation was declared; the resolution reading:

"Resolved, that a dividend of one and one-half per centum (1½%) from the surplus of the corporation be declared upon the preferred stock of the corporation, said dividend to be paid on July 6, 1915, to all stockholders of record as of July 3, 1915, and thereafter to the holders of all such preferred stock of the corporation as may be issued and exchanged for preferred stock of the Interborough Metropolitan Company or the Finance & Holding Corporation."

On July 6, 1915, the treasurer of the Consolidated Corporation opened the dividend account with Guaranty Trust Company and deposited a sum sufficient to pay the aforesaid dividend on all preferred stock of the Consolidated Corporation then issued, or which might subsequently be issued, in exchange for preferred stock of the Interborough-Metropolitan Company. On July 6, 1915, the treasurer of the Consolidated Corporation wrote Guaranty Trust Company as follows:

"I inclose herewith this company's check to your order for $686,107.50, with which we desire to open a check account with you, to be titled 'Interborough Consolidated Corporation Dividend Account Interborough Consolidated Corporation Preferred Stock,' against which we will draw our special dividend checks as per specimen inclosed. I have also to advise that, pursuant to resolution adopted June 3, 1915 (certified copy of which I hand you herewith), checks drawn on you against the above-mentioned account will be signed jointly by:

"John M. Burnet, Deputy Treasurer.
"Edward W. Sayre, Dividend Clerk.

"The resolution, however, does not take away the signing power of myself and certain other officers held under the by-laws, or any former resolution, and checks may be drawn on the account above referred to, signed by me as treasurer, jointly with either the deputy treasurer or dividend clerk above named. * * *"

Thereafter, at the close of each quarter following, upon the declaration of the dividend of July 6, 1915, and up to and including the

quarter ending April 1, 1918, quarterly dividends of 1½ per cent. each were declared and paid upon the preferred stock of the Consolidated Corporation; the resolutions declaring such dividends being substantially identical with the resolution above set forth in regard to the dividend declared on June 23, 1915. The treasurer of the Consolidated Corporation, a few days before these dividends became payable, would deposit the sum of $686,107.50 in the Consolidated Dividend Account, and checks would be forwarded to the record holders of stock to whom such dividend was payable, signed by Burnet and Sayre.

The sum of $57,330, which came into the possession of the trustee in bankruptcy, represents amounts which would have been used to pay the sum of $18 upon each of the 3,085 shares of preferred stock of the Consolidated Corporation, with interest allowable by the depositary on balances. This sum has been reduced to $55,530, by reason of the payment to one Milnor of $1,800 upon a state of facts somewhat different from that in the case at bar.

Neither the petitioners nor others similarly situated had exchanged their shares of preferred stock of the Interborough-Metropolitan for the preferred stock of Consolidated Corporation prior to the adjudication in bankruptcy, and the trustee contends that the sum of $55,530 is a part of the assets of the bankrupt, and is not impressed with any trust for the benefit of holders of shares of Interborough-Metropolitan preferred who had not, prior to the adjudication in bankruptcy, exchanged their shares for a like number of Consolidated Corporation preferred.

[1] The foregoing somewhat full statement of the facts shows that the petitioners were never stockholders of Consolidated Corporation, but that at any time prior to bankruptcy they were at liberty to exchange their stock under the terms of the agreement of consolidation. They could not be deprived of this right or privilege, except by statutory procedure, whereby either at the instance of the stockholders or of the new corporation (Business Corporations Law, § 8) the value of the stock is appraised and paid for.

1. As no such procedure was taken, and no such valuation of the old stock was had, or payment by the Consolidated Corporation was made, the first question is whether the proceedings in bankruptcy have in any manner affected the right of petitioners to have their shares of preferred stock of Interborough-Metropolitan exchanged for a like number of shares of preferred stock of the bankrupt corporation. Sections 7 and 8 of the New York Business Corporations Law (the essential features of which are quoted in the margin) [1] had in mind, among other things, the protection of nonassenting stockholders of the corporations concerned in a merger or consolidation. While there was no obligation upon the part of a stockholder of one of the merging corporations to exchange his stock, yet his right to such exchange under the agreement of consolidation, and probably under the statute, was a continuing right, which would survive after the consolidation, unless the stock was valued and paid for in the manner provided by the statute.

---

[1] See note at end of case.

These petitioners, therefore, clearly were entitled to exchange their stock at any time prior to the bankruptcy adjudication. I am unable to see that the bankruptcy adjudication in any manner changed or affected this right. The Consolidated Corporation still had the unexchanged shares, and the trustee, so far as this branch of the case is concerned, stands precisely in the same position as the bankrupt corporation stood prior to the bankruptcy. Matter of Le Blanc, 14 Hun, 8.

It is urged by the learned counsel for the trustee that a contract for the delivery of the shares of stock in a corporation is not, as a general rule, specifically enforceable, and that the remedy for a breach or failure to deliver must be sought in an action at law for damages. This proposition in a broad sense is true, although subject to certain limitations which need not here be discussed; but the rule, thus sought to be invoked, applies usually to executory agreements to sell stock of a corporation, or agreements such as in Kennedy v. Thomson, 97 App. Div. 296, 89 N. Y. Supp. 963, to issue stock in return for services or property. No case, however, has been called to my attention, where, as here, the rights or privileges, or both, of the parties, are fixed by statute and by an agreement of consolidation made in conformity therewith.

It must be remembered that the theory of the New York statute providing for consolidation is that the stockholder of the old company cannot be deprived of his stock by a consolidation. Such a stockholder has vested property rights, and he is left free to decide whether or not he shall give up what he has in exchange for what the consolidation offers. If he concludes, as in the case at bar, to remain quiescent, then the only way in which the new consolidation corporation could wipe out the stock of the old corporations, and remove whatever embarrassment might be connected therewith, was to pay the owner of the old stock the value thereof in the circumstances, and after the procedure provided by the statute. There is no question here of mutuality of remedy, because the statute has defined the rights of the parties, and the question is not of the character which usually arises where the relations of the parties are fixed by virtue of their own contract or agreement. The trustee has possession of the stock, which is physically unissued; but his act in issuing the same will be purely ministerial.

[2] 2. The fact that in this case the dividends were declared and set aside distinguishes it in principle from that class of cases where the trust fund question depends on the circumstances, and sometimes on the language used when the fund was created or deposited. The basic features which required decision in cases like Rogers Locomotive Works v. Kelley et al., 88 N. Y. 235, on the one hand, and Staten Island Cricket & Baseball Club v. Farmers' Loan & Trust Co., 41 App. Div. 321, 58 N. Y. Supp. 460, and Noyes v. First National Bank of New York, 180 App. Div. 162, 167 N. Y. Supp. 288, affirmed 224 N. Y. 542, 120 N. E. 870 on the other, are quite different from those in the case at bar; for in none of those cases had a dividend been declared and had a fund for the payment of dividends been set aside.

Where a dividend has been declared, and following such declaration,

in order to carry the declaration into effect, the corporation deposits a fund out of which the dividends are to be paid, that fund becomes a trust fund, and the corporation becomes the trustee of the fund. In other words, the debtor and creditor relation is transformed into a trust relation. Matter of Le Blanc, supra. In Staats v. Biograph Co., 236 Fed. 454, at page 458, 149 C. C. A. 506, at page 510 (L. R. A. 1917B, 728), the court said:

"But if a board of directors should declare a cash dividend, and make a public announcement of the fact, the courts have held that thereafter the board has no right to reconsider and rescind its action. The reason seems to be that the declaration of the dividend sets apart from the profits of the corporation a sum which is to be paid to the stockholders in proportion to their shares, and that it creates a debt due from the corporation to each shareholder, resulting in the relation of debtor and creditor. A dividend divides the property which belongs to the corporation into that which the corporation retains and that which the corporation agrees to pay to the stockholders, and which it is thereby bound to pay. * * * And sometimes the corporation becomes not merely a debtor, but is a trustee, as where the corporation has not only declared a dividend, but has deposited a fund out of which the dividends are to be paid. Le Roy v. Globe Insurance Co., 2 Edw. Ch. 657 (N. Y. 1836); Van Dyck v. McQuade, 86 N. Y. 38, 52 (1881)."

It has frequently been held, in one form or another:

"When a dividend has once been declared out of net earnings, the amount of such dividend is no longer a part of the assets of the company, but is appropriated or set apart for the shareholders. They receive credit for the dividends, and the corporation simply holds them as their trustee. Therefore, before a dividend has been declared, a share of stock represents the whole interest which the shareholder has in the corporation, and when he transfers his stock he transfers his entire interest, and dividends subsequently declared, without reference to the source from which or the time during which the funds divided were acquired by the corporation, necessarily belong to the holder of the stock at the time of the declaration. But when the dividend has once been declared, and credited to the shareholder, the amount thereof has been separated from the assets of the corporation and been appropriated to his use." Jermain v. Lake Shore & Mich. So. Ry. Co., 91 N. Y. 483, 492.

It follows in the case at bar that, the dividend having been declared and a fund having been set aside for the payment of dividends, the trustee has no right to so much of the fund as is necessary to pay dividends to those who by exchange of stock become stockholders. The question of the status and disposition of any balance of the fund which may remain, because no claim is made thereto, is not passed upon, and will be reserved until the estate is finally wound up or such earlier time as the question may arise.

The petitioners may have an order in accordance herewith.

After the foregoing was prepared there was filed by stipulation of the parties an affidavit of Campbell, the treasurer of the bankrupt, to the effect that from time to time subsequent to the opening of the Dividend Account and prior to the adjudication in bankruptcy, the Guaranty Trust Company of New York allowed interest on balances. This interest was not credited to the Dividend Account, but was forwarded by checks to the treasurer of the Consolidated Corporation, and was deposited in its General Account, and employed for the general purposes of the corporation.

The reply memorandum submitted by counsel for the trustee, in his desire to assist the court by an exhaustive consideration of the subject-matter, emphasizes the point that there was no trust in favor of the petitioners because at no time prior to bankruptcy were the petitioners stockholders. The acts and transactions of the Consolidated Corporation must, of course, be considered together. It will be remembered that the notice of July 17, 1915, stated that the then declared dividend was payable "when and as the Interborough-Metropolitan preferred stock is exchanged for the preferred stock of the Interborough Consolidated Corporation," and such was the consistent procedure of the Consolidated Corporation. In other words, whatever else may be the refinements of the situation, the Divident Account was set aside in such manner that automatically the dividend was payable on the preferred stock of the Consolidated Corporation as soon, in any event, as the holder of the preferred stock of the Interborough-Metropolitan, had by virtue of exchange, become a holder of the stock of the new consolidated corporation. The depositary was not the trustee, but the corporation itself was the trustee, by virtue of the various acts which have been discussed in the main opinion.

Of course, the Consolidated Corporation was not under obligation to deposit this Dividend Account with a Trust Company on an arrangement for interest. Theoretically it could have placed the money in specie in its safe. The right to the payment of the dividend attached only "when and as" the stock was exchanged, and therefore interest would only run from such time, if any, as the Consolidated Corporation refused to carry out the condition precedent upon the basis of which it had deposited funds in this Dividend Account. The fact, therefore, that the interest paid by the Trust Company was treated by the Consolidated Corporation as belonging to it has no significance, other than to make clear that the petitioners are not entitled to any interest for the period during which they failed to avail of their right to exchange the stock.

NOTE.

Business Corporations Law.

"Sec. 7. *Consolidation of Corporations.*—Any two or more corporations organized under the laws of this state for the purpose of carrying on any kind of business of the same or of a similar nature, which a corporation organized under this chapter might carry on, may consolidate such corporations into a single corporation, as follows: The respective corporations may enter into and make an agreement signed by a majority of their respective boards of directors and under their respective corporate seals, for the consolidation of such corporations, prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new corporation, the number of directors who shall manage its affairs, * * * the term of its existence, not exceeding fifty years, * * * the amount of its capital stock, which shall not be larger in amount than the fair aggregate value of the property, franchises and rights of such corporations, and the number of shares into which the same is to be divided, the manner of distributing such capital stock among the holders thereof. * * *

"Sec. 8. *Submission of Consolidation Agreement to Stockholders.*—Such agreement shall be submitted to the stockholders of each of such corporations, at a meeting thereof to be called upon notice * * * and if such agreement shall be approved at each of such meetings of the respective stockhold-

ers separately, by the vote by ballot of the stockholders owning at least two-thirds of the stock, the same shall be the agreement of such corporations, * * * and thereupon such corporation shall be merged into the new corporation specified in such agreement, to be known by the corporate name therein mentioned, and the provisions of such agreement shall be carried into effect as therein provided. If any stockholder, not voting in favor of such agreement to consolidate, shall at such meeting, or within twenty days thereafter, object to such consolidation and demand payment for his stock, such stockholder or such new corporation, if the consolidation takes effect at any time thereafter, may at any time within sixty days after such meeting apply to the supreme court at any special term thereof held in the district in which any county is situated in which such new corporation may have its place of business, upon at least eight days' notice to the new corporation, for the appointment of three persons to appraise the value of such stock, and the court shall appoint three such appraisers and designate the time and place of their first meeting, with such directions in regard to their proceedings as shall be deemed proper, and also direct the manner in which payment for such stock shall be made to such stockholder. * * * The appraisers shall meet at the time and place designated, and * * * after being duly sworn * * * shall estimate and certify the value of such stock at the time of such dissent. * * * When the new corporation shall have paid the amount of such appraisal, as directed by the court, such stockholder shall cease to have any interest in such stock and in the corporate property of such corporation, and such stock may be held or disposed of by such new corporation. Where any consolidation has been heretofore or shall be hereafter effected pursuant to the laws of this state, and the holders of ninety per centum of the capital stock of each of such corporations have voted in favor of such agreement to consolidate, if any stockholder not voting in favor of such consolidation shall fail to exchange his stock for stock of such new corporation within sixty days after this act shall go into effect, or, in case of a consolidation hereafter effected, within sixty days after he shall have become entitled to make such exchange, such new corporation may, at any time thereafter upon at least eight days' notice to such stockholder * * * apply to the court, as hereinbefore provided, for the appointment of three persons to appraise the value of such stock at the time of the expiration of such sixty days. Upon the completion of the appraisal in the manner hereinbefore provided for, and the payment by such new corporation of the amount of such appraisal, as directed by the court, such stockholder shall cease to have any interest in such stock, and in the corporate property of such corporation and such stock may be held or disposed of by such new corporation."