JOHN J. SHERRY,

*vs.*

UNION GAS UTILITIES, INC., a corporation of the State of Delaware.

*New Castle, Jan. 5, 1934.*

*Aaron Finger,* of the firm of Richard, Layton & Finger, for receivers.

*Thomas O'G. Fitzgibbon,* (of Davis, Polk, Wardwell, Gardiner & Reed), of New York City, for Guaranty Trust Company of New York.

THE CHANCELLOR: The question presented by this petition is whether the receivers are entitled to have the balances in question turned over to them to be adminis-

tered as a part of the general assets of the estate, or whether the Trust Company is entitled to hold them in trust for the payment of coupons not yet presented and to meet which the moneys were originally placed in the hands of the trustee.

That money for the payment of coupons may be so deposited as to show them to be subject to a trust for that purpose can hardly be controverted. *Rogers Locomotive & Machine Works v. Kelley, et al.,* 88 *N. Y.* 234; *Holland Trust Co. v. Sutherland,* 177 *N. Y.* 327, 69 *N. E.* 647; *Steel Cities Chemical Co. v. Virginia-Carolina Chemical Co.,* (*C. C. A.*) 7 *F.* (2d) 280. If nothing more appears, however, than the mere deposit of funds for the payment of coupons, it has been held that a trust for that purpose is not evidenced. When the circumstances show that the depositee of coupon funds possesses them for disbursement only as the paying agent of the depositor, no trust for the benefit of coupon holders arises, and the depositor is at liberty at any time to terminate the agency and retake the funds remaining in the account. *Staten Island, etc., Club v. Farmers' Loan & Trust Co.,* 41 *App. Div.* 321, 58 *N. Y. S.* 460; *Noyes v. First National Bank of N. Y.,* 180 *App. Div.* 162, 167 *N. Y. S.* 288, *affirmed in* 224 *N. Y.* 542, 170 *N. E.* 870; *In re Interborough Consolidated Corp.,* (*C. C. A.*) 288 *F.* 334, 32 *A. L. R.* 932. When a dividend has been declared and moneys deposited for its payment, it has been determined that such deposit unsupplemented by other evidence is affected with a trust in favor of stockholders. *In re Interborough Corp.,* (*D. C.*) 267 *F.* 914; *Guidise v. Island Refining Corp.,* (*D. C.*) 291 *F.* 922. The theory upon which these dividend cases proceed is that of an appropriation and segregation from the corporate assets of an identified portion for the benefit of its stockholders, from which the conception of a trust in favor of the stockholders is evolved. But with respect to a mere deposit of funds to meet interest coupons, standing alone, no such doctrine of an appropriation and segregation and a consequent trust has received countenance.

The distinction thus drawn between deposits to meet dividends on the one hand and deposits to meet interest coupons on the other, has been criticized by Judge Learned Hand, though accepted by him as the decisional law, as being without a clear basis in reason. *Guidise v. Island Refining Corp.,* supra, and *In re Gubelman, (C. C. A.)* 13 *F.* (2d) 732.

Whether a deposit of funds for payment of coupons is impressed by a trust which the coupon holders may enforce against the will of the depositing obligor, is a question of intention. That intention need not be an express one. It may be deduced from attending facts and circumstances. In the instant case it is insisted that the making out of the checks to the Trust Company as "Trustee" in four instances indicates that it was the intention in the other three instances that the money should be held by the Trust Company likewise as a trustee. This insistence is supported by *Sinclair Cuba Oil Co. v. Manati Sugar Co., (D. C.)* 2 *F. Supp.* 240, where it was held that if a trust is impressed upon one of a series of deposits to a coupon account by a satisfactory showing of an intention that the deposit is to be held in trust, a trust is impressed upon other deposits in the series in the absence of a manifestation of an intention to the contrary. The principle of that case is the more readily acceptable in the instant one for the reason that in one of the instances, viz., the remittance of October 30, 1930, though the Trust Company payee was not designated as trustee, yet the covering letter forwarding the check stated that the check was payable to the Trust Company as trustee. The conclusion is warranted, there being no evidence to the contrary, that all the payments to the Trust Company were affected with the same purpose and intent, viz., a purpose and intent to turn the moneys over to the Trust Company as a "trustee." But, say the receivers, "trustee" for whom and on what trusts? I think this question is answered by the office memoranda of the obligor and by the letters of transmittal. These documents by their language show that it must have been that the trustee was

receiving the money in trust for the coupon holders. It was for them that the checks were authorized and duly forwarded.

It is to be observed that the checks were made payable to the Trust Company. It is not shown how the Trust Company carried the checks in its accounts. There were no instructions from Union Gas to deposit the checks in a special account in its name. Union Gas, so far as the record shows, surrendered complete control over the sums covered by the checks. So far as the checks, which are the only evidence bearing on the matter, show, the amount of each check was drawn from the general deposit of Union Gas and transferred to the Trust Company. If so, this case is quite distinguishable from those cited cases wherein the coupon deposits were credited to the obligor's special coupon account and the paying agent disbursed interest payments from that account either on a general authority from the obligor or in payment of the obligor's own checks upon it.

Because of the considerations thus far advanced, I am of the opinion that the sums were made payable to the Trust Company as trustee specifically for the purpose of placing in its hands moneys for the purpose of paying the several interest maturities, that Union Gas parted with all control over the funds, and that the Trust Company thereafter held them in trust for the respective coupon holders.

But if I am in error in considering that the considerations I have already advanced are sufficient to warrant the conclusion just stated, the letters exchanged in December, 1931, amply support it. It cannot be doubted that if an exchange of letters to the effect of those in evidence had been made before the checks were forwarded, the Trust Company would be a trustee for the coupon holders and Union Gas could have no semblance of right to any of the balances. It would have been entirely proper and legal, if the funds had been so deposited as to be subject to withdrawal by Union Gas, for that company to have withdrawn

them and then reforwarded them to the Trust Company to be held in accordance with the trust set forth in the correspondence. Assuming them to have been so deposited originally as the receivers contend, what happened was this: instead of withdrawing and reforwarding the funds in trust, the course pursued was the non-circuitous one of leaving the funds where they were and affixing to them a declaration of their trust purpose. I can see no objection to that course of procedure. The fact that the letters declaring the trust post-dated the original deposits is of no moment. *McFadden v. Jenkins, 1 Hare* 458, 66 *Eng. Reprint* 1112, *affirmed* 1 *Ph.* 152, 41 *Eng. Reprint* 589; *Eaton v. Cook,* 25 *N. J. Eq.* 55.

Order declaring the Trust Company to hold the funds as trustee and instructing the receivers to abandon any claim thereto.