## Roehm v. Stetson et al.

*Jenkins, Bennett & Libby*, for plaintiff.
*Saul, Ewing, Remick & Saul*, for defendants.

FENERTY, J., February 19, 1941.—Plaintiff, May D. Roehm, obtained judgment in Montgomery County, Pa., against defendant, John B. Stetson, Jr., in the sum of $5,878.73, and on July 12, 1940, filed a transcript of the judgment in this court. At the same time an attachment sur judgment was issued against defendant, naming John B. Stetson Company as garnishee, and service of this writ and interrogatories was made on the garnishee, John B. Stetson Company, on the same day. It is to be noted, however, that the Provident Trust Company, the disbursing agent of John B. Stetson Company, the garnishee, was not served. The answer and supplemental answer of the garnishee aver that John B. Stetson Company declared a dividend on its preferred shares on June 27, 1940, to be payable on July 15, 1940, to such shareholders as were of record on July 1, 1940. Defendant was a record shareholder and became entitled to dividends of $2,533. It appeared that one day prior to the issuance and service of the attachment the garnishee forwarded to its disbursing agent, The Provident Trust Company, funds for the payment of the entire dividend. The Provident Trust Company mailed its own check for the dividend to defendant one day after the service of the attachment, to wit, on July 13, 1940. On these facts, plaintiff asks that judgment be given against the garnishee for want of a sufficient answer to the interrogatories.

Our appellate courts apparently have never had before them this precise situation. Nevertheless, in several instances they have taken occasion to express their conviction upon an analogous state of facts and, while it might be contended that the question is not conclusively answered by reason of these decisions, they are couched in such unqualified terms that we feel bound to follow their indication. We are convinced, therefore, that under these cases plaintiff's rule for judgment must be refused.

In Homan et al. v. First National Bank, 316 Pa. 23, the actual decision was that a deposit of money in a bank with directions to pay the same to bond coupon holders does not create a trust; but the court availed itself of the opportunity to consider the position of shareholders whose dividends had been segregated in a special dividend account and to approve the rule of the Interborough cases, cited infra. The language of Mr. Justice Schaffer is quite unambiguous (p. 26) :

"The rule applicable to the deposit of a fund for the purpose of paying a dividend is different from that covering a fund deposited to meet coupons, and would seem to be, according to decisions in jurisdictions in which the question has arisen, that where money is deposited by a corporation in a bank for the purpose of paying a dividend, the money so deposited is impressed with a trust in favor of the stockholders and cannot subsequently be withdrawn by the corporation: In re Interborough Consol. Corp., 267 Fed. 914, 918 (D. C. U. S. S. D. of N. Y.) ; Ibid., 288 Fed. 334 (C. C. A., 2d Cir.) ; LeRoy v. Globe Ins. Co., 2 Edw. Ch. 657; Jermain v. Lake Shore & Mich. So. Ry. Co., 91 N. Y. 483; Searles v. Gebbie, 115 App. Div. 778, 101 N. Y. Supp. 199, 190 N. Y. 533, 83 N. E. 1131; Matter of LaBlanc, 14 Hun 8, affirmed 75 N. Y. 598; Lowene v. American Fire Ins. Co., 6 Paige N. Y. 482."

In the Interborough case first cited by Mr. Justice Schaffer (267 Fed. 914 (1920) ), the contest was between the receiver of the bankrupt company and various shareholders who had not collected their dividends. Certain money had been deposited before bankruptcy in a special deposit account to pay dividends. The company itself drew dividend checks and mailed them to record shareholders. Some of these, who were entitled to receive the checks but for various reasons did not, brought reclamation proceedings to establish their right to the fund. The court held that as between share-

holders and a lien creditor (the status of the receiver) the shareholders were entitled to the fund. The sole ground of the decision was that the declaration of the dividends and the segregation of the funds to pay them created a trust. The court said (pp. 918, 919) :

"Where a dividend has been declared, and following such declaration, in order to carry the declaration into effect, the corporation deposits a fund out of which the dividends are to be paid, that fund becomes a trust fund, and the corporation becomes the trustee of the fund. In other words, the debtor and creditor relation is transformed into a trust relation . . .

"It follows in the case at bar that, the dividend having been declared and a fund having been set aside for the payment of dividends, the trustee has no right to so much of the fund as is necessary to pay dividends . . ."

Of course, the present situation is even more persuasive of a trust because a third party, the Provident Trust Company, is the holder of the dividend money, whereas in the cited case the Interborough Company was itself the trustee of the fund which is dedicated to dividends.

In the second Interborough case cited by Mr. Justice Schaffer (288 Fed. 334 (1923)), the Circuit Court of Appeals for the Second Circuit distinguished a fund arising from the declaration of a dividend from a fund set apart to pay interest, and stated expressly that the declaration of a dividend and the setting aside of a fund to pay would create a trust relationship and not the relationship of debtor and creditor.

This case was also cited with approval in Austin-Nichols & Co., Inc., v. Union Trust Company et al., 289 Pa. 341 (1927), where certain bonds had been sold by a coal company under an agreement to place the proceeds in trust with a bank to insure the payment of taxes which might be assessed against the coal company. The holding was that the agreement pursuant

to which the bonds were sold, and the proceeds deposited with the bank, created a trust which removed the funds from the control of the coal company and they were not attachable. Mr. Justice Sadler, speaking for the court, said (p. 348):

"A placing of securities in escrow for the benefit of a third party will protect the latter as against creditors (Sexton v. Kessler, 225 U. S. 90); so will the express appropriation of a fund to a certain use, as in the case of moneys deposited solely to pay dividends declared by a corporation, though the checks for the stockholders are drawn by the company (Interborough Case, 288 Fed. R. 334) . . ."

From the cases which we have considered, we are constrained to deduce that, by segregating the fund for dividends with the Provident Trust Company, the Stetson Company created a trust in the money for defendant and the other shareholders entitled thereto and barred itself thereafter from interference with the disposition of the fund. The writ of attachment was served only on the Stetson Company. No attempt was made to include the Provident Trust Company within the writ. But, having created a trust and put the money out of its hands, the Stetson Company, when served with the writ, had no funds due defendant which were reached by the process. The attachment, consequently, bound nothing and was ineffective.

We are not unmindful of the objections to this reasoning which plaintiff's counsel urges in his able brief, nor do we overlook the fact that none of the cases considered is precisely similar to the instant case. It is true that all these cases involved, in effect, contests between shareholders and creditors of the corporation, whereas here the dispute was initiated by a creditor of the shareholder. Nevertheless, it would seem to be an unwarranted attenuation of logic to conclude that a trust of this type would be effective as against creditors of the corporation but not as against creditors of

shareholders. If it be conceded that the segregation of funds for dividends creates, under the circumstances, a trust, we cannot acquiesce in a process of delimitation which would make of such a trust merely a fictional device, having only an indefinite unilateral existence. It must be deemed, rather, a valid and genuine concept, good as a trust under any aspect and capable of sustaining the legal consequences which flow from it.

And now, to wit, February 19, 1941, the rule for judgment against garnishee is discharged.