### SEARLES v. GEBBIE et al.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

1. CORPORATIONS—DIVIDENDS—RIGHTS OF STOCKHOLDER.

> Upon proper declaration of a dividend by a corporation, it becomes the debtor of the stockholder.
>
> [Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 561, 562.]

2. SAME—LIABILITY OF DIRECTORS.

> Directors are not liable to stockholders for a declared dividend until it has been severed from the assets of the company, so as to render it a trust fund in their hands.

3. ACTION—IMPROPER JOINDER—EQUITABLE AND LEGAL.

> A complaint by a stockholder against a corporation and its officers alleged a declaration of a dividend, its nonpayment, and asked judgment therefor. It also alleged the existence of a large surplus; that the directors, against plaintiff's protest, had authorized the issuance of additional stock at par (though the stock was worth more), allowing the stockholders to subscribe proportionately; that the directors subscribed for their share; that there was a "fraudulent agreement" to refuse to pay the dividend and thereby to "reappropriate" it to the company and to share in it under their new subscription made at par, and asked that the proposed increase be restrained. Held an improper joinder of the action at law and in equity.
>
> McLennan, P. J., and Williams, J., dissenting in part.

Appeal from Special Term, Herkimer County.

Action by George W. Searles against Frank Gebbie and others.

From an interlocutory judgment overruling a demurrer to the complaint, defendants appeal.  Reversed and demurrer sustained, with leave to plead over.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Albert H. Harris, for appellants.
C. E. Snyder, for respondents.

SPRING, J.   The defendant Mohawk Condensed Milk Company is a domestic corporation with a paid-up capital stock of $60,000, and the plaintiff is a stockholder thereof, owning stock of the par value of $1,-000, and until January, 1905, was one of the directors of the corporation.   The other defendants are its present officers and directors.

A brief summary of the salient allegations of the complaint is necessary for a comprehension of the questions at issue on this appeal.   On the 14th day of July, 1902, the directors of said corporation at a regular meeting declared a dividend of 50 per cent. on its capital stock, payable on the 1st of August thereafter.   At the time of the declaration of the dividend there was on hand a surplus of net earnings of more than $100,000, and in February, 1905, these earnings aggregated $108,-000.   The plaintiff has not been paid his dividend of $500, although he has demanded it, and he seeks to recover that sum of the corporation in this action.   The complaint further alleges:   That in 1905 the stockholders by resolution voted to increase the capital stock of said company to $240,000, and the directors were ordered to take the legal proceedings essential to make effective this increase.   The directors thereupon proceeded to provide for such increase by allowing those taking the new stock to do so at par, thus ignoring the "more than twice par" value of the present stock by reason of the existing surplus and which had been earned by the present capital.   The directors in their plan of increase expect to allow each of the present stockholders to subscribe for three times his present holding of stock, paying therefor in cash, and the plaintiff was so advised and permitted to so subscribe for the $3,000 of stock, which would represent his aliquot share of the increased capital.   That the defendant directors have each subscribed for their shares of said increase and they control said corporation and own a majority of its stock.   In January, 1905, the plaintiff was dropped from the directorship and there were other changes in that body, and the plaintiff charges that the election of new officers "was pursuant to a fraudulent agreement or understanding" among these majority stockholders to refuse to pay the said dividend, "and thereby to reappropriate said dividend to the company, and to share in said dividends and receive the benefits thereof, under their new subscription to increase the capital stock of the said company, their said new subscriptions being at par, whereas the old stock of said company is fully worth considerable more than $200 on a share."   That the plaintiff has "protested" against this proposed issue of new stock, and has requested the corporation to commence an action in equity to restrain its issue and also to require the corporation to pay the dividend declared, and upon refusal this action was commenced on his own behalf as a minority stockholder, and for

the benefit of all other stockholders similarly situated who desire to participate therein. The relief asked for is the payment of the dividend to the plaintiff and to restrain the proposed increase of the capital stock. The defendants have demurred on the ground that there is an improper misjoinder of the causes of action, and also that no cause of action is stated against the defendants.

There is a clean cut cause of action at law set forth against the corporation. Upon the declaration of the dividend the sum of $500 became due the plaintiff from the corporation. It became the debtor of the plaintiff. Ehle v. Chettenango Bank, 24 N. Y. 548; Am. & Eng. Encyc. of Law, vol. 9, p. 690 (2d Ed.). The directors were not personally chargeable with the payment of this dividend unless they converted it to their own use, or by some act changed their relation to it. At any time after the date fixed for the payment of the dividend the plaintiff could have maintained an action at law against the corporation to recover this sum. Nor was a suit in equity proper for an adequate remedy at law existed, and the directors would not be proper parties defendant in an action to recover this sum. They are not the debtor, but the corporation is the party liable. Now, where the amount of the dividend has been segregated or set apart into a distinct fund for the purpose of paying the dividend and is within the dominion of the directors, who refuse to use it for the purpose intended, they become trustees of the fund, and an action in equity may be maintained to reach the fund and to charge the directors with official misconduct. Le Roy v. Globe Ins. Co., 2 Edw. Chanc. Rep. 657; King v. Patterson, etc., R. R. Co., 29 N. J. Law, 89.

The respondent's counsel relies upon the Le Roy Case cited to sustain the contention that the action in equity will lie to recover the dividend. In that action an insurance corporation declared a dividend in November payable the 1st of the following December. On the 30th of November the dividend was carried on the books of the company to the profit and loss account, thus severing it from the assets of the company. Notice was published that payment of the dividend would be made on and after December 1st and checks were drawn and signed by the president to the order of the secretary, to whom they were delivered for indorsement and transfer to each stockholder as he called therefor. Four-fifths of the checks had been delivered, when, on the 16th of December, an extensive fire occurred in the city of New York, ruining the insurance company, and a receiver was appointed. The plaintiff was a stockholder and had not received his check dividend. He also had due him unearned premiums from a canceled policy of insurance. The receiver declined to pay the dividend or the premiums, and the stockholder commenced a suit in equity and recovered the dividend. The court held the action in equity was maintainable because the setting apart of the money to meet the dividend created a trust fund over which the officers of the company had control.

This case denotes the distinction between the liability at law of the corporation owing dividends to its stockholders and the money to pay which has never been severed from the mass of the corporate property, but to all intents and purposes remains a part of it, and the liability

in equity of the directors who have set apart the money into a distinct fund to pay the dividends and who hold that fund as the trustees of the stockholders, but refuse to distribute it. This distinction is noted in Lowne v. American Fire Insurance Co. et al., 6 Paige, 482. The complaint contains every allegation essential to constitute a perfect cause of action to recover this dividend of the corporation, and the facts alleged are supplemented in the demand for judgment that the corporation be required to pay the dividend with interest.

The other cause of action is distinctly one in equity. It charges the defendant directors with conspiring to increase the capital stock in an illegal and improper manner and for their own personal aggrandizement to the damage of the plaintiff and other minority stockholders, and asks that they be restrained from consummating the scheme. This remedy must primarily be at the instance of the corporation (Flynn v. Brooklyn City R. R. Co., 158 N. Y. 493–508, 53 N. E. 520), and the pleader recognized this necessity, for he alleges demand and refusal on the part of the defendant corporation to bring the action. This action, therefore, is only maintainable by the corporation, or upon its refusal, by a complaining stockholder to restrain the perpetration of a fraud which will tend to diminish the value of the corporate assets. The payment of the dividend is in no way affected by the consummation of this scheme. The corporation would still be liable to the plaintiff, as it has been since August, 1902, and during the directorship of the plaintiff. We appreciate that in construing a complaint imputing fraud to directors and the gravamen of which is to enjoin them from carrying out some plan fraught with damage to other stockholders, an isolated fact here and there may not be culled from the pleading as indicating a purpose to unite actions improperly. Bosworth v. Allen, 168 N. Y. 159, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667; Weber v. Wallerstein et al., 111 App. Div. 693, 97 N. Y. Supp. 852. And where there is plainly a single purpose to be achieved in the complaint it may contain in a series of facts or circumstances enumerated sufficient allegations to constitute other causes of action, providing they are pertinent to and connected with the relief sought. But we think the present complaint cannot be brought within that rule. It alleges, with much particularity, the facts entitling the plaintiff to maintain an action at law to recover this dividend of the corporation, with a demand for money judgment. These facts are made prominent in the pleading and there is no averment connecting them with the conspiracy, which is the pith of the action in equity. A reading of the complaint impels the belief that it was intended to set forth two independent causes of action. No fraud is charged in the declaration of the dividend. No misappropriation of it is alleged. No culpability is ascribed to the directors in connection with it, except "to reappropriate" it to the company, which is intelligible, and no inability of the plaintiff to collect it is suggested. If the plan of increase in the capital stock is carried out, the plaintiff could still enforce the payment of his dividend. The omission to pay the dividend has no connection with the alleged fraudulent agreement of which he complains. The inception of the fraud is charged to have

been at the time of the election of the directors in January, 1905, nearly two years and a half after the plaintiff's cause of action to collect the dividend had accrued. We think two causes of action were improperly united.

The complaint contains the facts to some extent upon which the alleged agreement to defraud is founded. Whether the plan is of the ·dishonest character claimed by the plaintiff depends upon the construction to be put upon these several facts, and we are not disposed now to hold they may not be sufficient to constitute a cause of action. Their effect can be determined much more satisfactorily when the evidence has been presented. The charges of the fraudulent agreement are sweeping and consist too much in conclusions, but we cannot say that a construction may not be given to the facts which are alleged supporting the imputation of fraud.

The interlocutory judgment should be reversed, with costs and disbursements of this appeal, and the demurrer sustained, with costs, with leave to the plaintiff to plead over, etc. All concur, except McLENNAN, P. J., who dissents in an opinion in which WILLIAMS, J., concurs.

McLENNAN, P. J. (dissenting). It seems to me that the complaint states but one cause of action in equity. As is clearly pointed out in the prevailing opinion, the cause of action inuring to the plaintiff because of defendants' legal declaration of a dividend and of their refusal to pay the same gave to the plaintiff a right of action at law to collect the same. In the case at bar it is alleged, and the gravamen of the complaint is, that the defendants have conspired together and have wrongfully deprived the plaintiff and other persons similarly situated from receiving the benefits of the corporation of which he and his associates were stockholders, because of the fraud and improper conduct of the defendant in the premises. The fact that the dividend referred to had been declared and unpaid was only referred to for the purpose of showing that such fact, with others alleged, tended to prove a fraudulent scheme and conspiracy on the part of the defendants to deprive the plaintiff of his rights in the premises. The allegation is that the defendants did certain illegal acts, one of which was to refuse to pay a dividend which had been duly declared, which, with the other illegal acts which had been committed, tended to deprive the plaintiff and others similarly situated of their legal rights in the premises. Under such circumstances we can conceive of no reason why in such an action a plaintiff may not recover what is due and owing to him arising under an action at law and at the same time secure the equitable relief to which he is entitled.

Concisely stated, the complaint alleges that the defendants were derelict in their duty, in that, among other things, they failed to pay the dividend in question, and one of the chief charges of bad faith and dereliction of duty of the defendants was their failure and refusal to pay the dividend in question. It cannot be said that because the complaint alleged a declaration of such dividend and the refusal of the corporation to pay the same that a separate cause of action was

stated independent of the other allegations of the complaint. The chief cause of action alleged in the complaint is conspiracy, and one of the facts tending to show such conspiracy is the failure to pay the dividend, which had been duly declared and which had become a debt against the company.

I conclude that the demurrer was properly overruled and that the interlocutory judgment should be affirmed, with costs, with leave to the defendant to plead over upon payment of the costs of this appeal and of the demurrer.

WILLIAMS, J., concurs.